THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF LOUISIANA
MONROE DIVISION

| | | |
|---|---|---|
| **DYAELDIN M. SAAD-OMER** | * | **CIVIL ACTION NO. 06-1065** |
| **Versus** | * | **JUDGE JAMES** |
| **ALBERTO GONZALES, ET AL** | * | **MAGISTRATE JUDGE HAYES** |

## REPORT AND RECOMMENDATION

Before the undersigned Magistrate Judge, on reference from the District Court, is a Petition for Writ of *Habeas Corpus* under 28 U.S.C. § 2241 (Doc. #1) filed by *pro se* Petitioner Dyaeldin M. Saad-Omer ("Saad-Omer") on June 26, 2006. The Government has responded to Saad-Omer's petition (Doc. #8). For reasons stated below, it is recommended that Saad-Omer's petition be **DISMISSED without prejudice**.

## BACKGROUND

Saad-Omer, a native and citizen of Sudan, arrived in the United States on or about February 4, 1996, at New York, New York as a visitor for pleasure with authorization for a temporary period not to exceed August 3, 1996. On November 25, 1996, the Immigration and Naturalization Service issued an Order to Show Cause and Notice of Hearing charging Saad-Omer with removal pursuant to § 241(a)(1)(B) as a non-immigrant remaining for a time longer than permitted. On February 19, 1997, Saad-Omer was granted voluntary departure in lieu of deportation to the Sudan on or before May 21, 1997.[1] On March 1, 2002, Saad-Omer was released under an Order of Supervision.[2]

---

[1] Saad-Omer states that he remained in the United States from January 1998 through November 2001 under Temporary Protective Status ("TPS") and that, in 2001, his attorney failed to meet the TPS deadline, at which point he was placed back in removal status.

[2] According to Saad-Omer, this occurred four days after he was taken into custody. He claims that, in February 2002, he was contacted by an FBI agent who requested that he Saad-Omer meet with him at a designated meeting place. Saad-Omer claims that when he arrived at

On August 26, 2003, Saad-Omer moved to reopen his deportation proceedings so that he might reapply for asylum and withholding of deportation based on evidence of changed country conditions in Sudan. On September 15, 2003, an Immigration Judge denied the motion because it was untimely. On July 20, 2004, he Board of Immigration Appeals ("BIA") affirmed this ruling and denied Saad-Omer's Motion to Remand for the purpose of applying for relief under the Convention Against Torture Act. Correspondence from ICE to Saad-Omer's attorney dated August 23, 2004, reveals that Saad-Omer applied for a stay of deportation or removal which was denied.[3] The correspondence also indicates that Citizenship and Immigration Services denied Saad-Omer's last application for Temporary Protective Status on May 7, 2003, and that Saad-Omer subsequently advised the Office of Detention and Removal that he was willing to self-deport; this, however, did not take place.[4]

On May 26, 2005, Saad-Omer was convicted of Conducting an Unlicensed Money Transmitting Business in Intrastate/Foreign Commerce and sentenced to 18 months in prison. On July 3, 2005, ICE lodged a detainer with McRae Correctional Institution in McRae, Georgia, where Saad-Omer was serving his sentence for the aforementioned offense. On October 28, 2005, a warrant of removal/deportation and a Form I-294 Warning to Alien Ordered Removed or Deported were issued. According to the Government, these exhibits suggest that Saad-Omer entered ICE custody on October 28, 2005. Saad-Omer, however, states in his petition that he has

---

the meeting place he was taken into custody.

[3]The correspondence indicates that Petitioner failed to submit with his application a passport valid for at least sixty days beyond the expiration of the stay. ICE sent Petitioner's passport to the Embassy of Sudan to be renewed; however, the passport was returned to ICE with no action taken.

[4]According to Saad-Omer, he could not self-deport because his deportation officer, Office B. Hurley, had not secured a travel document and had misplaced his passport as a result of a move of the office headquarters to another location.

been in ICE custody since December 20, 2005. On April 25, 2006, ICE reviewed Saad-Omer's custody and issued a decision to continue his detention as he was considered a flight risk if released. On June 13, 2006, ICE again continued Saad-Omer's detention.

According to the record of DACS case comments submitted by the Government, a travel document request was sent to the Sudanese Consulate on January 17, 2006. On March 6, 2006, ICE inquired by fax into the status of the travel document request. On March 14, 2006, the Consulate informed ICE that Saad-Omer's travel document request was still being processed and to call back in approximately two days. Subsequently, ICE called and left messages with the Consulate on March 17, 2006, and April 10, 2006. On approximately June 1, 2006, the Consulate informed ICE that a travel document was likely to be issued by the end of the following week. On June 29, 2006, ICE again contacted the Consulate and was told that the office was being moved and to call back on July 5, 2006. On July 3, 2006, a travel document request was sent to Headquarters and a voice male message was left with the Consulate. On August 21, 2006, the Consulate informed ICE that the a travel document was not ready and that they wished to interview Saad-Omer. The interview was scheduled for August 23, 2006.[5]

In his petition, Saad-Omer's sole claim is a challenge to his post-removal detention under the framework the United States Supreme Court established in *Zadvydas v. Davis*, 533 U.S. 678 (2001). According to Saad-Omer, the presumptively reasonable six-month detention period has expired and there is no significant likelihood of his removal in the reasonably foreseeable future.

## LAW AND ANALYSIS

In reviewing a petition for writ of habeas corpus by a detained alien who is subject to a final order of removal, a federal district court, pursuant to the authority of 28 U.S.C. §2241(c)(3),

---

[5]The Government stated that it would file a supplemental response with the Court indicating what, if any, progress was made as result of the scheduled August 23, 2006, interview. However, no such response has been filed.

is to gauge whether a particular set of circumstances amounts to detention within, or beyond, a period reasonably necessary to secure removal. In *Zadvydas*, the Supreme Court held that 8 U.S.C. § 1231(a)(6), the post-removal-order detention statute, implicitly limits an immigrant's detention to a period reasonably necessary to bring about that immigrant's removal. *Id.* at 688-98. The Court noted that the statute does not permit indefinite detention; the "reasonably necessary" detention period should be limited to six months after the removal order becomes final. *Id.* at 697-702. After that six month period expires, and the immigrant demonstrates that there is no significant likelihood of removal in the reasonably foreseeable future, the Government must furnish sufficient rebuttal evidence. *Id.*

In this case, while the presumptively reasonable six-month detention period has indeed expired, Saad-Omer has failed to demonstrate that there is no significant likelihood of his removal in the reasonably foreseeable future. The lapse of the presumptive detention period, by itself, does not mandate release, *see Zadvydas*, 533 U.S. at 701, and the petitioner must still give good reason to believe that his removal is unlikely in the foreseeable future. Saad-Omer has presented no evidence to support a claim that he will not be removed in the reasonably foreseeable future. In addition, the Government has demonstrated that it is engaged in ongoing efforts to obtain Saad-Omer's travel documents from the Sudanese government, and there is no indication that Sudan has refused to issue a travel document for Saad-Omer. In short, Saad-Omer has failed to prove that he is unlikely to be removed in the reasonably foreseeable future, and it is recommended that his petition be **DISMISSED without prejudice.**

Under the provisions of 28 U.S.C. §636(b)(1)(C) and FRCP Rule 72(b), the parties have **ten (10) business days** from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within **ten (10) business days** after being served with a copy thereof. A courtesy copy

of any objection or response or request for extension of time shall be furnished to the District Judge at the time of filing. Timely objections will be considered by the District Judge before he makes a final ruling.

**A PARTY'S FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THIS REPORT WITHIN TEN (10) BUSINESS DAYS FROM THE DATE OF ITS SERVICE SHALL BAR AN AGGRIEVED PARTY, EXCEPT ON GROUNDS OF PLAIN ERROR, FROM ATTACKING ON APPEAL THE UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT JUDGE.**

THUS DONE AND SIGNED at Monroe, Louisiana, this 11th day of December, 2006.

KAREN L. HAYES
U. S. MAGISTRATE JUDGE